FUGERE *v.* ARONSON.

1. APPEAL AND ERROR—DENIAL OF RECOVERY AS A MATTER OF LAW—EVIDENCE.

Before a plaintiff may be found unable to recover as a matter of law after introduction of evidence, it must be viewed in the light most favorable to plaintiff.

2. AUTOMOBILES—OVERTAKING VEHICLES—STOPPING—ROAD SHOULDER—CONTRIBUTORY NEGLIGENCE.

In action and cross-action between motorists whose cars, which had been traveling in same direction at about 50 miles an hour,

collided as plaintiff was about to pass in left lane of pavement, since trial court would have been justified in holding plaintiff guilty of contributory negligence as a matter of law because of his failure either to stop before reaching defendant's car which swerved into left lane some 50 or 75 feet ahead of him or to drive out on 10-foot wide left shoulder, its denial of a new trial because verdict was claimed to have been against the great weight of the evidence *held*, not error.

3. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

In action between motorists, where plaintiff is found to have been guilty of contributory negligence as a matter of law, questions raised by him as to whether or not the trial court was in error in his charge to the jury on the question of damages and in his refusal to charge as requested by plaintiff are not discussed.

Appeal from Chippewa; Runnels (Herbert W.), J. Submitted June 9, 1938. (Docket No. 48, Calendar No. 40,018.) Decided October 3, 1938.

Case by John Fugere against Bernard M. Aronson for damages for personal injuries sustained in an automobile collision. Cross-declaration by defendant against plaintiff for damages for personal injuries. Verdict and judgment of no cause of action. Plaintiff appeals. Affirmed.

*Ray Derham* (*A. B. Davidson,* of counsel), for plaintiff.

*Hudson & Coates,* for defendant.

CHANDLER, J. This action grew out of an automobile collision between plaintiff and defendant which occurred in the daytime on May 19, 1937, on highway US–2, some five to eight miles south of Sault Ste. Marie. It was a clear day and the pavement was dry and the road straight and level. Both cars were traveling north, plaintiff being preceded

by defendant, and it was while plaintiff was attempting to pass defendant that the accident occurred, resulting in considerable damage to both cars and injuries to both parties.

Plaintiff, by his declaration, claimed that the defendant was guilty of negligence that was the proximate cause of the accident, and that he was free from any negligence that contributed thereto. Defendant denied the material allegations in plaintiff's declaration and filed a cross-declaration, insisting that the negligence of the plaintiff was the proximate cause of the accident, and that he (defendant) was guilty of no negligence that contributed thereto.

There were no eyewitnesses to the accident other than plaintiff and defendant, and as defendant claimed to have no recollection of the accident or as to what occurred immediately prior or subsequent thereto, plaintiff's version thereof must be accepted.

Plaintiff testified that when he first saw defendant the latter was driving about 55 miles per hour, and that inasmuch as he overtook defendant he must have been traveling at a speed in excess thereof; that as he approached, he noticed that defendant swerved to the left about a foot over the black center line a couple of times; that as he approached for the third time defendant was driving perfectly straight in his own traffic lane; that he then decided to pass and turned his car to the left to permit a clear view of the highway ahead, from which point he claimed he could see in front of him approximately a quarter of a mile; and, that, finding the road clear, he increased his speed and took the left lane, and "just as I did that I saw him swing over, and I sounded the horn, and he stopped in front of me and I applied my brakes, but couldn't avoid hitting him."

He further testified:

"*Q.* About how far behind him were you when you definitely decided to go by?

"*A.* About 100 feet.

"*Q.* How far behind when you blew your horn?

"*A.* About 75 feet. * * *

"When I swung out to see if the road was entirely clear, I did not see anything. of a sheep upon the highway. I looked carefully. I saw nothing upon the road that might interfere with safe passing. I saw the sheep only after the accident. * * * Our cars collided on the left-hand side of the highway, in the left lane. At the point of contact my left wheel was about a foot from the outside of the concrete. The part of my car which first contacted with the defendant's car was the front, right-hand side. * * * The impact sent the defendant's car a few feet ahead. He was pretty much in the same line, as far as the angle is concerned, but he was definitely in the left lane. He was ahead of my car. The first thing I did was to go to his car. He was conscious when he stepped out of the car, but I don't think he knew what he was doing. * * *

"*Q.* What indicated that to you?

"*A.* He was walking around in circles and looking on the ground, as if he was looking for something. I asked him what he was looking for, and he said he was looking for a place to land. (The defendant was employed as an officer in the Canadian Airport, which position he had held for about 18 years and during that time had flown irregularly.) I asked him why he drove in front of me, and he said, 'I hit a sheep.' 'Didn't you see the sheep?' and I said, 'No. Where is it?' He said, 'Right over there,' and I looked across the road and there was this sheep about four feet away.

"The sheep was right on the right-hand edge of the concrete. The sheep hit his car about the center of the radiator. The front of his car was bent in quite a little."

Plaintiff also testified the shoulder of the road at the point of collision "was quite wide, about 10 feet or so. I would say you could drive on it. I think the road was level," and further that "prior to the time he started to stop and turn to the left, I did not notice any change in the speed of defendant's car. At that time the road was perfectly level and the shoulder was very flat."

On cross-examination, plaintiff testified that,

"I was going 55 when I started to pass, and then I accelerated. I passed him exceeding 50 miles an hour with my car. I swung out when I was 75 feet back of him, and when I saw the road clear ahead I took the whole thing. My brakes were in good condition and would stop my car in the usual way. My foot went to the brakes when I was about 50 feet behind the Aronson car. * * *

"*Q.* Well, you are not positive as to the distance?

"*A.* No.

"*Q.* So that it was probably 75 feet, or it could vary either way?

"*A.* Yes, sir.

"*Q.* You sounded your horn about 75 feet—and you were going 60 miles an hour, and he was going 50 miles an hour?

"*A.* Yes, sir.

"*Q.* 'Just as plaintiff commenced to sound his horn defendant's car swung sharply to the left.' That would be when you were approximately 75 feet behind him?

"*A.* Yes, sir.

"*Q.* In other words you were 75 feet back when he turned to the left?

"*A.* Yes, about that. * * *

"*Q.* Do you know the distance in which you could stop your car, going at 75 miles per hour?

"*A.* I don't know, but I would say 50 to 75 feet.

"*Q.* You had 75 feet in which to stop? Why

didn't you stop?

"*A.* I did everything I could. I am not positive if the car would have stopped if I had put on my brakes within that distance, but I think so. The brakes on my car were very, very good. * * *

"*Q.* And what would be your estimate of the speed at which you were going when you hit the defendant's car?

"*A.* I wouldn't say.

"*Q.* You don't have any idea of the speed to do that amount of damage?

"*A.* No, sir.

"*Q.* Anyway, there was a lot of damage?

"*A.* Yes, sir.

"*Q.* You couldn't do it at 10 miles?

"*A.* Oh, no.

"*Q.* Or 20?

"*A.* No.

"*Q.* It must have been in excess of 30 miles an hour?

"*A.* I have no way of knowing.

"*Q.* In your opinion he would be going at least 20 miles an hour?

"*A.* I would say so, but at that I don't know. * * *

"The cars were never off the concrete nor off the shoulder. I tried to drive around his car and drive on the shoulder. I had 75 feet in which to do it. I didn't get my car off the concrete; it was about a foot from the edge. * * *

"I don't think that he swerved to the left to avoid the sheep. He stopped in my lane, in front of me. If he were attempting to avoid an animal, I would expect him to slow down. I don't know if that is what he was doing or not. This accident was not caused by the fact that I did not observe his car slowing down. I hit him because he drove in front of my car. If I had noticed that he was slowing down I could have applied my brakes and stopped. I had 75 feet leeway. I hit that car with a pretty good force."

We have quoted extensively from plaintiff's testimony because it is the only testimony in the record as to just how the accident occurred, and because, in view of our final conclusion, we must adopt that portion of the record most favorable to plaintiff's contentions.

At the conclusion of the plaintiff's proof, defendant moved the court to direct a verdict of no cause of action on various grounds, among which were the following: that there had been no negligence proved on the part of the defendant; and, that the testimony of the plaintiff himself showed that he was guilty of contributory negligence as a matter of law. It also appears that at the close of the defendant's proof the plaintiff moved the court for a directed verdict in favor of plaintiff as to such items of damage as were not vague and indefinite. The trial court stated that both motions were taken for advisement under the Empson act. 3 Comp. Laws 1929, § 14531 (Stat. Ann. § 27.1461). The jury, by their verdict, found defendant not guilty in manner and form as alleged by plaintiff in his declaration, and plaintiff not guilty in manner and form as alleged by defendant in his cross-declaration.

Plaintiff made a motion for a new trial, and the court in denying the same stated:

"I might also add that taking the plaintiff's own testimony as true, and applying the law as I believe it to be, I find the plaintiff could have and should have avoided the accident, and he has no claim of liability of any kind or nature against the defendant.

"Therefore, the motion of plaintiff for an order setting aside the judgment and verdict in this case and granting a new trial therein will be and hereby is denied."

Plaintiff appeals from the judgment rendered and from the order of the court denying him a new trial

on the ground that the verdict was against the great weight of the evidence. He claims that the court erred in refusing to grant certain charges requested by him as well as in the charge that was given.

The verdict was not against the great weight of the evidence as disclosed by the record and the court was not in error in dismissing plaintiff's motion for a new trial. In fact, we are inclined to the view that under the plaintiff's own uncontradicted testimony the court would have been justified in finding him guilty of contributory negligence as a matter of law. Plaintiff saw the peril that confronted him when he was from 50 to 75 feet in the rear of defendant. There was a level shoulder off the road extending at least 10 feet to the left of the pavement, and yet he did not leave the pavement or explain why he did not do so. He says he could have stopped his car within a distance of from 50 to 75 feet, but gives no explanation as to why this was not done. When defendant's car suddenly swerved to the left, plaintiff was approximately 75 feet in the rear and his assured clear distance ahead was not in excess thereof. It then became his duty to do what he could to avoid the collision by either stopping or taking the shoulder of the road to the left of the pavement. He did neither, but continued on in a straight line and was traveling at a speed in excess of 20 miles per hour when he struck defendant's car. Plaintiff's explanation "I did everything I could," coupled with his statement, "I am not positive if the car would have stopped if I had put on my brakes within that distance, but I think so," is far from convincing that his conduct under the circumstances of this case was that of a reasonably careful and prudent person. On the contrary, we find from the record that plaintiff did not use that degree of care which a

reasonably careful and prudent man would have used under like or similar circumstances, and that his negligence which conclusively contributed as a cause of the accident bars him from recovery in this action. *Luck* v. *Gregory*, 257 Mich. 562; *Meisenheimer* v. *Pullen*, 271 Mich. 509.

Having thus expressed our view that plaintiff cannot recover because of his own negligence, it becomes unnecessary to discuss other questions raised by him as to whether or not the trial court was in error in his charge to the jury on the question of damages and in his refusal to charge as requested by plaintiff.

Judgment affirmed, with costs to defendant.

WIEST, C. J., and BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred. BUTZEL, J., took no part in this decision.